UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------x
GEORGE JULIAN SOROKA,                              :
on behalf of himself and all similarly situated persons,   :          05 Civ. 7578 (DAB)
                                                   :
                        Plaintiffs,                :
                                                   :
             - against -                           :
                                                   :
JP MORGAN CHASE & CO., JP MORGAN CHASE             :
BANK N.A. and JP MORGAN CHASE                      :
MANHATTAN BANK USA, N.A.,                          :
                                                   :
                        Defendants.                :
--------------------------------------------------------------------------x


# PLAINTIFF'S MEMORANDUM OF LAW IN
## OPPOSITION TO MOTION TO DISMISS COMPLAINT

Gary B. Friedman (GF 2597)
Noah Shube (NS 1300)
FRIEDMAN & SHUBE
155 Spring Street
New York, New York 10012
(212) 680-5150

*Attorneys for Plaintiff*
*George Julian Soroka*

## TABLE OF CONTENTS

Table of Authorities ................................................................................... ii

Preliminary Statement .............................................................................. 1

Statement of the Case ............................................................................... 3

Argument .................................................................................................... 6

    I.    The Complaint States a Claim For Accessing Protected
          Consumer Credit Reports Without A "Permissible
          Purpose," In Violation Of 15 U.S.C. § 1681b ...................... 6

          A.    The FCRA Bans Use Of Consumer Credit Reports
                 For Target Marketing Purposes ................................. 6

                 1.    Position of the Federal Trade Commission ...... 8

                 2.    Cole and Related Case Law ............................. 9

          B.    The Instant Solicitation Is Not a "Firm Offer of Credit" ... 11

          C.    This Court Should Decline Defendants' Invitation
                 To Break From The Uniform Interpretation Given
                 The Act By The FTC And All Federal Courts .............. 12

    II.    The Complaint Alleges A Violation Of § 1681m(d) For Failure
          To Make Clear And Conspicuous Disclosure ...................... 13

          A.    Retroactive Application Of The FACT Act Is
                 Permissible Under Controlling Precedent ................... 14

          B.    The General Savings Statute Makes Pre-FACT Act
                 Violations Enforceable ............................................... 16

Conclusion ................................................................................................ 18

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Advance Pharmaceuticals, Inc. v. United States,*
   391 F.3d 377 (2d Cir. 2004) ....................................................................................... 17

Bowen v. Georgetown University Hosp.,
   488 U.S. 204, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988).............................................. 14

*Chevron U.S.A., Inc. v. Natural Resources Defense Counsel,*
   467 U.S. 837, 104 S. Ct. 2778 (1984)........................................................................... 12

*Cole v. U.S. Capital, Inc.,*
   389 F.3d 719 (7th Cir. 2004) ............................................................................... passim

*Hughes Aircraft Co. v. United States,*
   520 U.S. 939, 117 S. Ct. 1871 (1997).............................................................. 14, 15, 16

*Hyde v. RDA, Inc.,*
   398 F. Supp. 2d 658 (D. Md. 2005)........................................................................ 10, 13

Landgraf v. USI Film Products,
   511 U.S. 244, 114 S. Ct. 1483 (1994)............................................................. 14, 16, 17

*Murray v. Cross Country Bank,*
   No. 05 C 1252, slip op. (N.D. Ill. Aug. 15, 2005) ....................................................... 13

*Murray v. Flexpoint Funding Corp.,*
   No. 05 C 1253, 2005 U.S. Dist. LEXIS 12593, 2005 WL 1463500 (N.D. Ill. June 17,
   2005) ...................................................................................................................... 10, 11

*Murray v. GMAC Mortgage Corp.,*
   2005 U.S. Dist. LEXIS 28249 (N.D. Ill. August 2, 2005)...................................... 10, 11

*Murray v. Household Bank (SB), N.A.,*
   386 F. Supp. 2d 993 (N.D. Ill. September 12, 2005)................................................... 13

*Murray v. Sunrise Chevrolet, Inc.,*
   No. 04 C 7668, 2005 U.S. Dist. LEXIS 20397, 2005 WL 2284245 (N.D. Ill. September
   15, 2005) ...................................................................................................................... 10

Scott v. Boos,
   215 F.3d 940 (9th Cir. 2000) .................................................................................. 15, 16

*Trans Union Corp. v. Federal Trade Comm'n,*
   245 F.3d 809 (D.C. Cir. 2001).................................................................................. 6, 12

**Cases (cont.)**                                                           **Page(s)**

*Trans Union Corp. v. Federal Trade Comm'n,*
   267 F.3d 1138 (D.C. Cir. 2001) ..................................................................................... 8

*Trans Union Corp. v. Federal Trade Comm'n,*
   81 F.3d 228 (D.C. Cir. 1996) ......................................................................... 5, 6, 11, 12

United States v. Breier,
   813 F.2d 212 (9th Cir. 1987) ..................................................................................... 17

*United States v. Mead Corp.,*
   533 U.S. 218, 121 S. Ct. 2164 (2001) ........................................................................ 12

*United States v. Van Horn*,
   836 F.2d 1235 (9th Cir. 1988) ................................................................................... 17

## Statutes

Fair and Accurate Credit Transactions Act of 2003, Pub. L. No. 108-159, 117 Stat. 1952
   (codified in scattered sections of 15 U.S.C.) ........................................................ 13, 16

Fair Credit Reporting Act, 15 U.S.C. § 1681a *et seq*. (the "FCRA") ........................ passim

General Savings Statute, 1 U.S.C. § 109 ................................................................... 16, 17

## Other Authorities

Amicus Curiae Brief of Federal Trade Commission in *Cole v. U.S. Capital* ..................... 8

S. Rep. No. 103-209 (1993) ................................................................................................ 8

## Rules

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 18

## Regulations

16 CFR Part 600 ............................................................................................................ 3, 8

iii

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
GEORGE JULIAN SOROKA,                                    :
on behalf of himself and all similarly situated persons, :          05 Civ. 7578 (DAB)
                                                         :
                              Plaintiffs,                :
                                                         :
            - against -                                  :
                                                         :
JP MORGAN CHASE & CO., JP MORGAN CHASE                   :
BANK N.A. and JP MORGAN CHASE                            :
MANHATTAN BANK USA, N.A.,                                :
                                                         :
                              Defendants.                :
------------------------------------------------------------------------x


### PLAINTIFF'S MEMORANDUM OF LAW IN
### OPPOSITION TO MOTION TO DISMISS COMPLAINT

Plaintiff George Julian Soroka submits this memorandum of law in opposition to

the motion of defendants JP Morgan Chase & Co., JP Morgan Chase Bank N.A., and JP

Morgan Chase Manhattan Bank USA, N.A. (together, "Chase" or "Defendants") to

dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).


### Preliminary Statement

Under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a *et seq*. (the "FCRA"), a

lender such as Chase may not access a consumer's credit report -- or purchase so-called

"prescreening lists," which are culled from those reports based on criteria furnished to a

credit reporting agency -- unless the lender agrees in advance to provide all consumers on

the list with a "firm offer of credit." This case concerns the question of whether the "firm

offer of credit" requirement of the FCRA is satisfied by an advertising flyer from a home

equity lender that contains no guaranteed offer of credit in any minimum amount, specifies no interest rate or repayment period, and is "subject to change without notice."

Chase's motion urges this Court to ignore the interpretation given to the "firm offer of credit" provision of the FCRA by quite literally every court to have considered the issue, including the Seventh Circuit, the D.C. Circuit and numerous district courts, as well as the interpretation of the Federal Trade Commission, which is charged with administering the FCRA and whose considered reading of the statute is legally entitled to substantial deference. All of these authorities, as shown below, recognize that a "firm offer of credit" must provide appreciable value to the consumer; it must include some guaranteed minimum amount of credit, and specify an interest rate, or range of rates, along with other basic terms.

Chase further offers the deeply disingenuous argument that the solicitation materials it sent Plaintiff do in fact provide appreciable value; indeed, Chase asserts that the flyer contains a minimum guarantee of $15,000 in credit, or $10,000 in Michigan. *See,* Defs. Mem. at 7, 10, 12 and 15. This is a flat-out falsehood. The advertising flyer sent to Soroka does not guarantee one nickel of credit. It provides that, in the event Chase determines to grant credit in an amount less than $15,000 (or $10,000 in Michigan), then Chase may unilaterally cancel the alleged "offer." But there is no guarantee that Chase will determine to grant a line of credit in any amount whatsoever, much less $15,000. See below at pp. 4-5.

In addition, Chase challenges Plaintiff's second claim for relief, which alleges that the terms and conditions are not set forth in a "clear and conspicuous" fashion, and so violate § 1681m(d)of the FCRA. While the Act was amended in 2004 to provide that

2

the FTC has exclusive jurisdiction to enforce § 1681m(d), that amendment is not entitled to retroactive application under the governing principles of this Circuit.

### Statement of the Case

As alleged in the Complaint, Chase regularly obtains from the major consumer reporting agencies, Experian, Trans Union and Equifax, "prescreening" lists based on data culled from consumer credit reports. As defined by the FTC, "[p]rescreening means the process whereby a consumer reporting agency compiles or edits a list of consumers who meet specific criteria and provides this list to the client [such as Chase] . . . for use in soliciting these consumers for the client's products or services." *See*, 16 CFR Part 600 Appendix, § 6. As the FTC further observes, prescreening is only "permissible under the FCRA if the client agrees in advance that each consumer whose name is on the list after prescreening will receive an offer of credit." *Id.*

Chase caused both Experian and Equifax to access confidential consumer credit reports on Plaintiff Soroka, without his consent or knowledge, and one or both of these agencies provided Chase with a prescreening list that identified Soroka as having met Chase's stated criteria. *See*, Complaint, ¶¶ 23, 24. Soroka did not initiate any transactions or communications with Chase.

Based on the prescreening lists, Chase sent Soroka – and, on information and belief, all other consumers on the list – a flyer in the form annexed to the accompanying Declaration of Noah Shube as Exhibit 1 (the "Flyer"). The Flyer is in the nature of a typical direct mail advertising solicitation. In the familiar fashion of all such junk-mail come-ons, the Flyer entreats the consumer to "**Use our money to pay off your bills!**" It contains a phony credit card – as a "sample" of what a real card might look like – and a

3

phony (or sample) check, made out to the consumer in the amount of "*Up to one hundred thousand or more*" dollars and zero cents.  The dominant element on the back-side of the Flyer is the statement "**NO MORE HIGH-INTEREST RATE DEBT!**" *See*, Shube Decl. Ex. 1.

The Flyer does not promise any extension of credit whatsoever, announcing only that "**You're pre-qualified for up to $100,000 or more!**"  Not only is that a totally meaningless sentence – referring as it does to any number between zero and infinity – but even this non-offer is susceptible by its own terms to "change without notice" at any time, and is qualified by a plethora of conditions and contingencies including unstated minimum income and equity level requirements.  There is no minimum amount mentioned, much less guaranteed.  Nor is there any mention of any particular interest rate, or even a range of interest rates.  Nor is there mention of a repayment period, or the method of calculating interest, or the amount of equity or collateral required.  *See*, Complaint, ¶¶ 6-7.[1]

Most telling here is the outrageous falsehood, urged by Chase in its moving brief, that the Flyer somehow "guarantees" a minimum of $15,000 (or $10,000 in Michigan).  What the Flyer *actually* states, in this regard, is that Chase reserves the right to withdraw

---

[1]  In addition to the absence of these fundamental terms, the Flyer contains the following non-exhaustive list of additional contingencies, conditions precedent, limitations and absent terms: the Flyer fails to state whether any interest rate would be fixed or variable; makes any loan contingent on whether Soroka has" sufficient income to repay the new [loan]" or owns a home; provides that Chase may unilaterally "withdraw [the] offer in its entirety" unless Soroka "compl[ies] with all of our loan program requirements" and "underwriting criteria," without disclosing what such requirements and criteria might be; provides that Chase may unilaterally "withdraw [the] offer its entirety" if Soroka moves outside Chase's "marketing area",  without  disclosing what the geographical dimensions of such a marketing area might be; and states that the issuance of any loan may require that Soroka "incur premiums for hazard and  … flood insurance."

any offer in the event that it determines, in its sole discretion, to offer less than $15,000 (or $10,000 in Michigan) to any consumer. *See* Shube Decl., Ex. 1, page 2.  It is amazing that Chase would highlight this sentence, which clearly evidences that there is no offer of credit at all.  If nothing else, Chase may offer the consumer zero by making an offer of $14,999 or less and then withdrawing the offer.

The plain reality is that the Flyer is an advertisement -- a solicitation entreating the consumer to submit an application for credit -- and nothing more.  Rather than expend many millions of dollars and send these come-ons to people who may not have any interest in its products, Chase engages the credit reporting agencies to cull lists of targets for its marketing efforts.  This is "target marketing," pure and simple.  And, as shown below, buying or selling "consumer reports for target marketing violates the Act."  *See, Trans Union Corp. v. Federal Trade Comm'n,* 81 F.3d 228, 234 (D.C. Cir. 1996) ("*Trans Union I*").

Furthermore, the Flyer fails to make the disclosures required by § 1681m(d) in a "clear and conspicuous" manner. Chase places the disclosures on the reverse side of the Flyer in tiny non-bolded print, and makes no reference to the small print disclosures on the front of the solicitation.  Most of the back-side of the Flyer is empty white space, used to set off and emphasize the marketing hype, and the mandated disclosures (defective as they are) are crammed into a small box taking up $1/4^{th}$ of the page, in stark contrast to the liberal use of bolded and oversized font employed on the front of the Flyer.

5

**ARGUMENT**

**I.**

**THE COMPLAINT STATES A CLAIM FOR ACCESSING
PROTECTED CONSUMER CREDIT REPORTS
WITHOUT A "PERMISSIBLE PURPOSE,"
IN VIOLATION OF 15 U.S.C. § 1681b**

As shown below, Chase's "target marketing" activities here are decidedly not a

"permissible purpose" for accessing a consumer credit report under the FCRA.

Prescreening is only legal under the FCRA where the lender agrees in advance that it will

make a guaranteed offer of credit to all consumers that meet the specified criteria.  The

sale or purchase of such target lists based on consumer credit reports for mere marketing

purposes – i.e., for the purposes of sending out flyers or other solicitations to a whittled-

down group of potential customers, as opposed to sending out guaranteed offers of credit

– is a clear violation of the FCRA.  As courts have uniformly held, "selling consumer

reports for target marketing violates the Act." *Trans Union I*, 81 F.3d at 233-34; *Trans*

*Union Corp. v. Federal Trade Comm'n,* 245 F.3d 809, 813-14 (D.C. Cir. 2001) ("*Trans*

*Union II")*; *accord Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 725 (7th Cir. 2004).[2]

**A.**     **The FCRA Bans Use Of Consumer Credit Reports
For Target Marketing Purposes**

The FCRA enumerates a comprehensive and exclusive list of the permissible

purposes for which consumer credit reports may be accessed.  *See* § 1681b(a) ("subject to

---

[2] Purchasing consumer reports for target marketing, or any other impermissible purpose,
is every bit as illegal as selling them.  Indeed, Congress specifically amended the FCRA
in 1996 to add § 1681b(f), which provides that "[a] person shall not use or obtain" a
report for any purpose other than enumerated permissible purposes.  Sections 1681n and
1681o, in turn, impose civil liability on "[a]ny person" who violates "any requirement" of
the FCRA.

subsection (c) of this section, any consumer agency may furnish a consumer report under the following circumstances and no other") (emphasis added).   For the most part, the permissible purposes are transactions initiated by consumers; where a consumer applies for credit, employment or insurance, for example, the reporting agency may release the consumer's report. *See,* 15 U.S.C. § 1681b(a)(3)(A)-(F).

Section 1681b does, however, provide for certain limited situations in which a consumer credit report may be accessed even though the consumer did not initiate the transaction or otherwise authorize the release of her credit report.  The only such provision relevant here is § 1681b(c)(1)(B)(i), which provides that agencies may release protected information for the purpose of extending a "firm offer of credit or insurance."[3] The term "firm offer of credit or insurance" is defined to mean "any offer of credit or insurance that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." 15 U.S.C. § 1681a(*l*).[4]

In enacting this provision, Congress "balanced any privacy concerns created by pre-screening with the benefit of a firm offer of credit or insurance for all consumers

---

[3]  In addition to the "firm offer" provision discussed here, the FCRA allows reports to be released, without consumer approval, only pursuant to grand jury subpoena or court order, or to enforce child support payments. *See,* §§ 1681b(a)(1), 1681b(a)(4) and 1681b(a)(5).

[4]  The statute provides that the offer may be conditioned on three specific requirements. First, of course, the lender may apply whatever lending criteria that it provided to the reporting agency as the basis for culling the list.  *See* § 1681a(*l*)(1). Second, the firm offer may be conditioned on verification "that the consumer continues to meet the specific criteria used to select the consumer for the offer." § 1681a(*l*)(2). Finally, the offer may be conditioned on the consumer's furnishing any collateral that was both established before the selection of the consumer for the offer and disclosed to the consumer in the offer. *See* § 1681a(*l*)(3).

identified through the screening process." *See,* S. Rep. No. 103-209, 13 (1993), quoted in

*Cole,* 389 F.3d at 725. "In exchange for allowing credit and insurance providers to obtain

lists based on more sensitive information . . . the bill requires that the credit or insurance

provider make a 'firm offer,' as defined in section 101 of the Committee bill, of credit or

insurance to all consumers on the list." *Cole.,* citing S. Rep. No. 103-209 at 14.

### 1.    **Position of the Federal Trade Commission**

The Federal Trade Commission is charged with broad enforcement and rule-

making authority under the FCRA. *See* 15 U.S.C. § 1681s.  Discharging that authority,

the FTC has emphasized that "[p]rescreening is permissible under the FCRA if the client

[i.e., the lending institution] agrees in advance that each consumer whose name is on the

list after prescreening will receive an offer of credit."  16 CFR Part 600 Appendix, § 7.

Commenting on the precise matter at issue here, the FTC has observed:

> [t]he FCRA recognizes that such offers provide something
> of value to consumers, in return for which many consumers
> will be willing to yield a degree of privacy. * * * When
> Congress provided in the FCRA that firm offers of credit
> constitute a permissible purpose but failed to create a
> permissible purpose for those engaged only in target
> marketing, Congress determined that "people are more
> willing to reveal personal information in return for
> guaranteed offers of credit than for catalogs and sales
> pitches.

Amicus Curiae Brief of Federal Trade Commission in *Cole v. U.S. Capital*, *supra*, at 22-

23, Shube Decl., Ex. 2, *quoting, Trans Union Corp. v. Federal Trade Comm'n,* 267 F.3d

1138, 1142 (D.C. Cir. 2001) (emphasis added).

As the FTC further opined, in a passage adopted by the Seventh Circuit in *Cole*,

"[i]f the important privacy protections of the FCRA are to retain their vitality, users of

consumer reports information must not be permitted to evade them through the use of

8

sham offers of credit that have no appreciable economic value to consumers." *Id.,* Shube

Decl. Ex. 2 at 23; *Cole,* 389 F.3d at 728, n.8.

### 2.     *Cole* **and Related Case Law**

The federal courts have likewise understood the "firm offer of credit" provision to

require that lenders may not access consumer credit reports unless they are prepared to

guarantee to each consumer on the prescreening list "sufficient value for the consumer to

justify the absence of the statutory protection of his privacy." *Cole*, 389 F.3d 726.

In *Cole,* the defendant lender argued that "the FCRA does not require a minimum

amount of credit to be offered, and therefore the preapproval could be for any amount,

perhaps even as low as $ 1." 389 F.3d at 726-27.   The Seventh Circuit roundly rejected

that argument:

> [S]uch a definition would permit anyone to gain access to a
> sea of sensitive consumer information simply by offering
> some nominal amount of guaranteed credit. . . The statutory
> scheme of the FCRA makes clear that a "firm offer" must
> have sufficient value for the consumer to justify the
> absence of the statutory protection of his privacy. A
> definition of "firm offer of credit" that does not incorporate
> the concept of value to the consumer upsets the balance
> Congress  carefully struck between a consumer's interest in
> privacy and the benefit of a firm offer of credit for all those
> chosen  through  the  pre-screening  process.  From  the
> consumer's perspective, an offer of credit without value is
> the equivalent of an advertisement or solicitation. It is clear
> that Congress did not intend to allow access to consumer
> credit information "for catalogs and sales pitches." *Trans
> Union Corp.*, 267 F.3d at 1143. Such importuning simply--
> and understandably--is not among the permissible reasons
> for which a credit agency may disclose a consumer's credit
> information.

*Id.* (emphasis added*).*

9

Accordingly, the Seventh Circuit held that the "district court's focus on whether the offer would have been honored was inappropriately narrow," and it cautioned that where a putative "offer" is, in fact, "a guise for solicitation rather than a legitimate credit product, the communication cannot be considered a firm offer of credit." *Cole*, 389 F.3d at 727-28. The court further held that, "in making this assessment," courts must evaluate the "amount of credit to be extended," as well as other key terms such as interest rate and repayment period: "The terms of an offer, such as the rate of interest charged, the method of computing interest and the length of the repayment period, may be so onerous as to deprive the offer of any appreciable value." *Id.*, 389 F.3d at 728.

In the *Cole* case itself, the putative "offer" was for an automotive loan in the minimum guaranteed amount of $300. 389 F.3d at 723. Other courts have applied *Cole* to putative "offers" that contain a variety of terms. *See, Murray v. Flexpoint Funding Corp.*, No. 05 C 1253, 2005 U.S. Dist. LEXIS 12593, 2005 WL 1463500 (N.D. Ill. June 17, 2005) (upholding complaint based on solicitation for home equity loan, which specified 5.75% interest rate but contained no guaranteed minimum and was subject to change); *Murray v. GMAC Mortgage Corp.*, 2005 U.S. Dist. LEXIS 28249 (N.D. Ill. August 2, 2005) (upholding complaint based on solicitation for home equity loan with no minimum guaranteed amount); *Murray v. Sunrise Chevrolet, Inc.*, No. 04 C 7668, 2005 U.S. Dist. LEXIS 20397, 2005 WL 2284245 (N.D. Ill. September 15, 2005) (upholding complaint based on solicitation for automotive loan that stated minimum guaranteed amount was "up to $19,500").

Likewise, in *Hyde v. RDA, Inc.*, 398 F. Supp. 2d 658 (D. Md. 2005), the District of Maryland recently applied *Cole* to deny a motion to dismiss a complaint under the

10

FCRA where the flyer promised "you are guaranteed to receive a loan of a minimum of $300" in automotive financing.  In denying the motion and following *Cole,* the court stressed the small loan amount and the failure of the flyer to "specify an interest rate or range of interest rates . . . [or] mention a repayment period."

**B.**   **The Instant Solicitation Is Not a "Firm Offer Of Credit"**

Measured against the standards set forth above, the Flyer that Chase sent to Plaintiff Soroka is indisputably not a "firm offer of credit" within the meaning of the FCRA.  Rather, the direct mail Flyer is a paradigmatic expression of the target marketing that Congress intentionally excluded from the permissible purposes enumerated in the FCRA.  *See, Trans Union I*, 81 F.3d at 232.

As discussed above in the Statement of the Case, the Flyer sent to Plaintiff did not guarantee even one dollar of credit.  Nor did it establish an interest rate or range of interest rates, or mention a repayment period.  For all of these reasons, and because of all the contingencies set forth above, the Flyer clearly does not qualify as a firm offer of credit.

Finally, just as it was disingenuous for defendants to argue that the Flyer contains a guaranteed minimum amount, so too are they stretching mightily when they argue that this case is somehow distinguishable from *Cole* because it involves home equity lending as opposed to automotive credit.  The distinction is a fallacy.  The defendant lender in *Cole*, Capital USA, sent out its flyer as an advertisement to help it sell credit products, which is exactly what Chase is doing here.  Moreover, as set forth above, other district courts have not hesitated to apply *Cole* in the home equity loan situation.  *See, Murray v. Flexpoint Funding Corp*, *supra*; *Murray v. GMAC Mortgage Corp., supra.*

11

**C.**    **This Court Should Decline Defendants' Invitation To Break From The**
**Uniform Interpretation Given The Act By The FTC And All Federal Courts**

Stripped to its essence, Chase's argument is that even a sham offer may constitute

a "firm offer" under the Act, so long as it "will be honored."  Chase's real argument,

whether it acknowledges it or not, is that pure target marketing is a permissible purpose

under the FCRA.

Certainly, there is nothing in the plain language of the statute that compels such a

result, which is irreconcilable with the Seventh Circuit's decision in *Cole,* the D.C.

Circuit's decisions in *Trans Union I and II*; the District of Maryland's decision in *Hyde*

and, indeed, every judicial decision to take up the question.  Moreover, Chase's position

flies in the face of the unswerving interpretation given to the statute by the FTC, which is

charged with administering the FCRA, and whose interpretations are entitled to

substantial deference.  *See, United States v. Mead Corp.,* 533 U.S. 218, 227-28, 121 S.

Ct. 2164 (2001); *see generally*, *Chevron U.S.A., Inc. v. Natural Resources Defense*

*Counsel*, 467 U.S. 837, 104 S. Ct. 2778 (1984).

Nor is there any vitality to Chase's argument that other unrelated statutes and

regulations – including the Truth In Lending Act, or certain  Federal Reserve regulations

– somehow mean that the FCRA cannot be read to require any specificity in the terms of

a "firm offer."   This notion is totally baseless.  It may well be that TILA or other laws

require, for various purposes, certain itemized disclosures.  But none of that is in tension

with the fact that the FCRA requires an offer of sufficient definiteness and value that it is

– at the very least – capable of being accepted.  And towards those ends, courts are

absolutely right to require a statement of such basic terms as minimum guaranteed

12

amount, interest rate or range and time period for repayment. *See, e.g., Hyde v. RDA, Inc.,* 398 F. Supp. 2d  at 665; *Cole,389* F.3d at 728.

## II.

### THE COMPLAINT ALLEGES A VIOLATION OF § 1681m(d)  FOR FAILURE TO MAKE CLEAR AND CONSIPICUOUS DISCLOSURE

Defendants also move to dismiss Plaintiff's claim under § 1681m(d), which requires that the requisite statutory disclosures be set forth in a "clear and conspicuous" fashion.  Chase bases its motion on recent amendments to the FCRA, which were implemented by the Fair and Accurate Credit Transactions Act of 2003 (the "FACT Act"), which took effect in December 2004.

According to Chase, the FACT Act eliminates a private right of action for violations of the "clear and conspicuous" requirement of the FCRA.  However, even assuming that Defendants' interpretation of the amended statute is correct -- i.e., even accepting fully the analysis of the district court in *Murray v. Cross Country Bank*, No. 05 C 1252, slip op. (N.D. Ill. Aug. 15, 2005), appended to Chase's motion papers as Exhibit B[5] -- they cannot take advantage of this change in the law to require dismissal of Plaintiff's "clear and conspicuous" FCRA claims to the extent the events underlying Plaintiff Soroka's claim took place *before* the enactment of the FACT Act, which may not be applied retroactively, under controlling principles of law.  Because the violations

---

[5]  It is not entirely obvious that the FACT Act repealed all private rights of action under §1681m; one could certainly argue that the FACT Act, codified at §1681m(h)(8), repealed only actions brought under §1681m(h), which would not affect plaintiff's claim here.  However, while courts have recognized that "§1681m is not a model of precise draftsmanship," *Murray v. Household Bank (SB), N.A.,* 386 F. Supp.2d 993 (N.D. Ill. September 12, 2005) they have rejected interpretations that would limit the repeal to §1681m(h), *see id.*, and Plaintiff does not urge such a construction here.

of § 1681m(d) consist in the preparation of a Flyer that contains inadequate disclosures –

and because it is not clear in the absence of discovery when that Flyer was prepared --

Chase's motion to dismiss this claim should be denied.

A.      **Retroactive Application Of The FACT Act Is Impermissible
        Under Controlling Precedent**

As the Supreme Court has repeatedly held, "the presumption against retroactive

legislation is deeply rooted in our jurisprudence." *Landgraf v. USI Film Products*, 511

U.S. 244, 265, 114 S. Ct. 1483 (1994); *Bowen v. Georgetown University Hosp.*, 488 U.S.

204, 207, 109 S. Ct. 468, 102 L. Ed. 2d 493 (1988)). "[C]ongressional enactments and

administrative rules will not be construed to have retroactive effect unless their language

*requires* this result." *Bowen*, 488 U.S. at 208 (emphasis added).

Under the test enunciated in *Landgraf*, a court first examines the statutory text to

determine if the legislature has expressly defined the statute's reach. *Landgraf*, 511 U.S.

at 280. If the statute does not have an express statement, a court proceeds to the second

prong of the *Landgraf* test, under which the court determines "whether the new statute [or

amendment] would have retroactive effect, i.e., whether it would impair rights a party

possessed when he acted, increase a party's liability for past conduct, or impose new

duties with respect to transactions already completed." *Id.*.

Where a statutory amendment eliminates or adds a private cause of action

altogether, this standard clearly militates against giving retroactive application to the

amendment. In *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 117 S. Ct. 1871

(1997), for example, the Supreme Court held that a 1986 amendment to the False Claims

Act, which altered the scope of the private right of action provisions of that statute, would

14

have an impermissible retroactive effect if applied to pre-1986 conduct. *Hughes*, 520 U.S. at 941-42, 950.  The amendment at issue removed a bar to *qui tam* suits under the False Claims Act, extending "an FCA cause of action to private parties in circumstances where the action was previously foreclosed." *Id.*, 520 U.S. at 949. The *Hughes* court observed that "in permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially created a new cause of action, not just an increased likelihood that an existing cause of action will be pursued." 520 U.S. at 950.

Another case in point is the Ninth Circuit's decision in *Scott v. Boos*, 215 F.3d 940 (9th Cir. 2000), which concerned an amendment to the Private Securities Litigation Reform Act (the "PSLRA") that eliminated the right of private plaintiffs to pursue RICO claims under the PSLRA.  The *Scott* court determined, first, that Congress did not expressly provide for retroactive application of the amendment. 215 F.3d at 944.  Next, applying the second prong of *Landgraf*, it held that the repeal of the private cause of action would indeed have a "retroactive effect" on the rights of plaintiffs: "Taking away a plaintiff's right to a remedy under RICO would have the [required retroactive] effect." 215 F.3d at 947.  The court observed, in this connection, that "the PSLRA in fact eliminates RICO as a cause of action." *Id.*  Accordingly, the court "conclude[d] that the RICO amendment has retroactive effect" and it held:

> Because we have found that Congress has not expressly provided the statute's temporal reach and that the statute has retroactive effect, the presumption against retroactivity applies unless Congress's intent to the contrary is clear. *See Landgraf*, 511 U.S. at 280. Our analysis persuades us that there is no clear congressional intent to apply the RICO amendment retroactively.

*Id.*

15

Under these standards, retroactive application of FACT Act would clearly be impermissible. Assuming *arguendo* that Congress eliminated a private right of action under § 1681m(d), effective December 2004, it is clear that "Congress has not expressly provided the statute's temporal reach" and that application of the statute would have a "retroactive effect." *Scott*, 215 F.3d 947; *see, Hughes* 520 U.S. at 951-52. Nor, as in *Scott*, can defendants point to anything in the legislative history to overcome the presumption against retroactive application. Indeed, the contrary is true. Congress provided that FACT Act would become effective on a delayed schedule, which is hardly consistent with an intention to allow for retroactive application.[6] Pub. L. No. 108-159, § 3.

Accordingly, there is no basis for giving retroactive application to the FACT Act and Defendants' motion should be denied.

**B.      The General Savings Statute Makes Pre-FACT ACT Violations Enforceable**

In addition to the U.S. Supreme Court's *Landgraf* test, the General Savings Statute, 1 U.S.C. § 109, provides a further, independent basis for denying Defendants' motion. Section 109 of the General Savings Statute provides:

> The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability.

1 U.S.C. § 109.

---

[6]    Indeed, Congress left the effective dates of the Act indefinite and charged the Board of Governors of the Federal Reserve System and the Federal Trade Commission with establishing appropriate effective dates. Pub. L. No. 108-159, § 3.

16

Although the "savings clause on its face applies to the 'repeal of any statute,' it has been held to apply to statutory amendments as well." *United States v. Breier*, 813 F.2d 212, 215 (9th Cir. 1987).  It is also clear the General Savings Clause applies to civil penalties and forfeitures, just as it applies to criminal liability. *Landgraf*, 511 U.S. at 271-72; *Advance Pharmaceuticals, Inc. v. United States*, 391 F.3d 377, 399 n. 11 (2d Cir. 2004); *United States v. Van Horn*, 836 F.2d 1235, 1237 (9th Cir. 1988) (finding "no authority for the proposition that 1 U.S.C. § 109 does not apply to civil penalties and forfeitures in the same manner as to criminal fines and forfeitures").

Under the clear and literal terms of the General Savings Clause, the repeal of the private right of action for violations of § 1681m(d) -- assuming *arguendo* that private right was repealed -- shall not release any "liability incurred under such statute, unless the repealing Act shall so expressly provide."   Accordingly, for this reason as well as the principles set forth in *Landgraf*, the defendants' motion should be denied.

17

## Conclusion

For all of the foregoing reasons, Plaintiff respectfully submits that Chase's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) should be denied in its entirety.

Dated: New York, New York
         December 19, 2005

**FRIEDMAN & SHUBE**

Gary B. Friedman (GF 2597)
Noah Shube (NS 1300)
155 Spring Street
New York, New York 10012
(212) 680-5150

**MARKUN ZUSMAN & COMPTON LLP**
David Markun Esq.
Kevin Eng, Esq.
17383 Sunset Blvd.
Suite A380
Pacific Palisades, CA  990272
(310) 454-5900

*Attorneys for Plaintiffs*